UNITED STATES OF AMERICA
SOUTHERN DISTRICT OF TEXAS

RECEIVED IN CHAMBERS

SEP 27 2021

GRAY H. MILLER
U.S. DISTRICT JUDGE

UNITED STATES OF AMERICA

§
§
§

VS.

Maria Moreno

CRIMINAL NO.
4:17-cr-00651-5

United States Courts
Southern District of Texas
FILED

OCT 18 2021

Nathan Ochsner, Clerk of Court

## MOTION FOR HARDSHIP CREDIT FOR HARDTIME SERVED

NOW COMES Maria Moreno, Defendant Respectfully Moving Said Court in the Southern District of Texas with a MOTION FOR HARDSHIP CREDIT FOR HARDTIME SERVED, Requesting that the Honorable Judge Gray H. Miller of Said Court grant a minimum Two days and maximum Three Days Credit for one day Served.

### INTRODUCTION

The Defendant being incarcerated for 2 months in segregation all the time in F.D.C Houston P.O. BOX 526255 Houston tx, 7705 an estimated Forth Bend detention for 26 months. And now serving 17 months in joe Corley detention center
is Considered under the Constitutional rights for Prisoners a HARDTIME detention facility, invoking several protections under the 8th Amendment of the United States Constitution.

### SUPPORTING ARGUMENT

There are several factors to consider for this motion that are present at the Joe Corley Detention Facility and F.D.C and Forth Bend can further trigger protections under the 8th Amendment and warrant the two to three days credit for one day served by a U.S Marshal Detainees at such a Facility. All information is foundational within the walls of this facility and sited information from the "Rights of Prisoners", Third Edition Pages 85-120.

The Role of the Courts regarding United States citizens sentenced to confinement as punishment for criminal activity do not lose the protections afforded them by the United States Constitution. The eighth amendment to the Constitution prohibits the infliction of "cruel and unusual" punishments upon citizens. This prohibition applies not only to the federal government but also to the states in their operation of state penitentiaries. (Whitley v. Albers, 1986).
The eighth amendment prohibits punishments which, although not physically barbarous, involve the unnecessary and wanton infliction of pain (psychological or physical), are grossly disproportionate to the severity of the crime, or are "totally without penological justification."

A court faced with the responsibility of drawing the line between constitutional and unconstitutional conditions undertakes a delicate task. No static test determines whether conditions of confinement are

"cruel and unusual." These terms must "draw [their] meaning from the evolving standards of decency that mark the progress of a maturing society." Rhodes, 452 U.S. at 346. This analysis *should not be subjective*. Rather, the court's judgment must be "informed by objective factors to the maximum possible extent." Id.

The role of the courts, then, is to enforce constitutional standards and to protect the constitutional rights of prisoners. Ruiz v. Estelle, 679 F.2d 1115, 1126 (5th Cir. 1982), cert. denied, 460 U.S. 1042, 75 L. Ed. 2d 795, 103 S. Ct. 1438 (1983). This somewhat convoluted legal process really means that once a plaintiff shows that a state official's actions have violated the Constitution, the court can indirectly reach the state -- "the scope of the district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." (Swann v. Charlotte-Mecklenburg Board of Education, 1971). Thus, the {719 F. Supp. 1262} Court can reach the Commonwealth through the named defendants in this case.


1.      The Joe Corley Detention facility, F.D.C and Forth Bend operates a communal segregation Jail with limited liberty interest afforded to the inmates in general population. Punitive segregation has a long pedigree in this country ever since prisons were established in the early nineteenth century for various reasons, including using it as a sanction for the serious violations of institutional rules. In more recent time, the units have continued to be used as punishment for rules infractions or unduly or disruptive inmates. At Joe Corley, F.D.C and Forth Bend this in the General Population. Typically, an inmate in this status is locked up in his cell or dorm for 23 or more hours per day with limited opportunities for exercise or programming. As a result, the conditions impose at least partial social isolation and partial reduction of certain form of stimulation as compared to "normal General populations within the federal system. As a result of the ongoing pandemic of Covid-19 emotional and mental hardship has been unbearable, due to restrictions of visits, and being unable to see my children. As well as the constant threat of contracting the virus while being detained. According to some estimates as many as 7 to 10% of all inmates are currently confined in some form of punitive segregation, not being able to care for oneself if a fellow inmate would contract the virus. Again, the Joe Corley jail operated this type of system that has become a norm within the development of "Super max" prisons designed to house inmates who are considered the most incorrigible or difficult.

1.a.    The access to recreational services is limited to only several hours per week and at times less than a 1 hour per day, at times several days can go by without any recreational time at all making the detention intolerable. The new Covid-19 Pandemic has really pushed back recreational time back to Zero hours a week. We are confined 24/7. Recreation can often become just as stressful as being in the small dorm units with no window access. In these "Super max" units' inmates are held under conditions similar to punitive segregation. Prisoners are locked in their cells for virtually the entire day and night with very limited opportunities for programs or recreation. These units are built and used for inmates with disciplinary problems such as gang activity. The facility also has no classification which combines all types of disruptive personalities in one confined space for 23-24 hours a day. Thus, in litigation about conditions in these units both the objective and the subjective branches of the Eighth Amendment test must be considered. I am requesting the court view my stay at Joe Corley, Grady County Sheriff's Office, McClennan County Sheriff's Office, and Bastrop County Sheriff Office as a stay of punitive segregation and that I am being punished harshly. For sentenced detainees, challenging restrictive housing practices in a jail setting is governed by the Fourteenth Amendment; however, the standard to be applied is the Eighth Amendment test. See, e.g., *Landfair v. Shehan*, 878 F. Supp 1106 (N.D. Ill.1995)The issue in this case like most cases is whether the conditions in the punitive segregation unit, or in the way which a particular

punitive segregation unit operates, falls below "contemporary standards of decency" through the unnecessary and wanton infliction of psychological pain. There is a strong case to make for the proportion that this kind of restrictive confinement, with the severe sensory deprivation that it entails, at least when used for extended periods of time, violates the Eight Amendment. Research validates these observations. Studies confirm that "serious emotional consequences" result when isolation is utilized as a form of imprisonment. (U.S. v. Moreland, 1992).

2.   Dietary needs of inmates are below federal prison standards and "Meals" can be considered "Cruel" which is tolerable for 1 to 2 days but cruel and unusual under the 8th Amendment beyond that. As the Court put it in the Hutto case, confinement in a filthy, overcrowded cell and a diet of "gruel" might be tolerable for a few days and intolerable after weeks and months.

3.   The lack of Movement, where an inmate who is not in quarantine segregation, isolated segregation, administrative segregation or otherwise disciplinary segregation is subjected to the aforementioned treatment creating a condition of disproportionate punishment to an offense.

4.   The time an inmate in general population spends in his or her cell can at times be in excess of 23 hours in a single day period which can amount to solitary confinement and a serious and significant deprivation of liberty. Our general population is a 20 ft by 20 ft. dorm with 12 beds of which we spend 23-24 hours a day. Since the onset of the Covid-19 virus pandemic in March, we spend 24 hours a day in our dorm and have very limited activity.

5.   Personal Hygiene is significantly degraded at the facility which depends on the inmate population which is transient in nature to maintain the cleanliness of the facility, and common illnesses, which are easily avoidable, can become a problem. The limited medical staff is unable to suppress before the entirety of the inmates is affected. In our dorm, 12 adults share 1 toilet and 1 shower. We do not have access to bleach or scouring pads to properly clean and disinfect. We receive only 2 toilet papers a week and have a hard time getting more from the c.o.'s.

6.   The fact that we have to drink water, washes our hands, and cleans our eating utensils out of the same sink that is provided for us, it's also the same instrument that we have to use to relieve ourselves of our bodily waste. Being that we also urinate and defecate out of this instrument I truly believe that is totally unsanitary and asinine to our rights.

7.   According the warden, the handbook of rules and procedures that govern Joe Corley apply to both general population as well as protective custody. However, the enforcement of these rules is quite different. General population detainees receive "recreation time" for at least 1 hour, 7 days a week. PC detainees receive, on average, recreation time 3-4 days a week. When PC detainees file complaints about food being stolen off their trays or laundry taken from their laundry bags, they are ignored by ranking officials. When detainees in a PC dorm complain about a fellow detainee placed in their dorm, those complaints are ignored. When the aforementioned PC detainee threatens, exposes himself to, and sexually and/or physically assaults his fellow PC detainees (violations under PREA), it is almost impossible to get the warden and/or members of rank to remedy the situation and remove the offender.

8.  While being incarcerated at the "Joe Corley Detention Center, Grady County Sheriff's Office, McClennan County Sheriff's Office, and Bastrop County Sheriff Office" is most assured to be classified as in institution that should qualify to extend "HARDSHIP TIME CREDIT" because of these certain partially violated rights.

## CONCLUSION

**Federal courts will provide relief for deprivation of a prisoner's constitutional rights to be free of cruel and unusual punishment during his or her stay, when the conditions such as the ones at the Joe Corley Detention Facility, F.D.C and Forth Bend become such that a prisoner is deprived of personal hygiene, and physical movement, the 8th Amendment is violated. In addition, punishment that is imposed for an improper purpose or is disproportionate to the offense can violate a prisoner's 8th Amendment.**

## PRAYER

Wherefore Premise considered, the Defendant prays the Honorable Judge of said Court in the Southern district of Texas Grant the MOTION FOR HARDSHIP CREDIT FOR HARDTIME SERVED, and grant Defendant two to three days credit for one day served for the time jailed at the Joe Corley Detention Facility, F.D.C and Forth Bend. Ms. Moreno has been in daily prayer since his initial arrest until this day for those affected by his offenses, forgiveness, a renewed heart, for grace under God and under the hand of the court.

Respectfully Submitted,

X Maria Moreno
Maria Moreno
Defendant



Mar
500 hilbig Rd
Conroe Tx, 77301

United States Courts
[Dist]rict of Texas

OCT 18 2021

Nathan Ochsner, Clerk of Court

This is Legal Mail
has not been inspected

THIS MAIL
FROM
JOE CORLE[Y]

RECEIVED IN CHAMBERS

2021

GRAY H. MILLER
U.S. DISTRICT JUDGE